UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| FRIENDS OF THE RIVER, a non-profit corporation, DEFENDERS OF WILDLIFE, a non-profit corporation, and CENTER FOR BIOLOGICAL DIVERSITY, a non-profit corporation, | ) ) ) ) ) ) | Case No. 2:11-CV-01650 JAM-JFM |
| Plaintiffs, | ) ) | ORDER DENYING DEFENDANTS' MOTON TO DISMISS |
| v. | ) ) ) | |
| UNITED STATES ARMY CORPS OF ENGINEERS, and MAJOR GENERAL MEREDITH W.B. TEMPLE, in his official capacity, | ) ) ) ) ) ) | |
| Defendants. | ) | |

Before the Court is Defendants' United States Army Corps of Engineers and Major General Meredith W.B. Temple, (collectively "the Corps" or "Defendants"), Motion to Dismiss (Doc. #26) the First Amended Complaint ("FAC," Doc. #25) filed by Plaintiffs Friends of the River, Defenders of Wildlife, and the Center for Biological Diversity, (collectively "Plaintiffs"). Plaintiffs oppose the motion (Doc. #47).[1]

_____

[1] This motion was determined to be suitable for decision without oral argument. E.D. Cal. L.R. 230(g). The hearing was scheduled for February 22, 2012.

1                I.   FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

2        Plaintiffs allege that for decades the Corps has allowed,

3   encouraged, and, in some cases, required the planting of trees and

4   vegetation on levees for environmental purposes, including habitat

5   preservation.  Plaintiffs allege that the Corps reversed course

6   when it issued the "Final Draft White Paper: Treatment of

7   Vegetation within Local Flood Damage-Reduction Systems" ("White

8   Paper") on April 20, 2007.  Plaintiffs contend the White Paper

9   calls for a vegetative-free-zone for all levees.

10       Plaintiffs allege that Defendants changed the regulatory and

11  environmental status quo when they adopted Engineer Technical

12  Letter 1110-2-571 ("ETL"), allegedly replacing EM 1110-2-301, on

13  April 10, 2009 and again ten months later when they produced the

14  draft Environmental Assessment/Finding of No Significant Impact on

15  February 9, 2010 for the "Policy Guidance Letter – Variance from

16  Vegetation Standards for Levees in Floodwalls" ("PGL").  Plaintiffs

17  allege that through a Federal Register Notice ("Federal Register

18  Notice") the PGL acknowledged that the ETL Guidelines establish

19  "mandatory vegetation-management standards for levees."  75 Fed.

20  Reg. at 6364.

21      The ETL establishes "Guidelines for Landscape Planting and

22  Vegetation Management at Levees, Floodwalls, Embankment Dams, and

23  Appurtenant Structures."  Plaintiffs aver that the ETL prohibits

24  all vegetation except grass, requires a vegetation-free zone 15

25  feet to each side of a levee, and requires removal of all non-

26  compliant vegetation.  The ETL, according to Plaintiffs, requires

27  levee operators to seek a variance to retain non-compliant

28  vegetation for environmental purposes.  Plaintiffs further allege

1  that the Corps itself described the ETL standards as "mandatory" in

2  the Federal Register and the Corps is currently implementing the

3  ETL in California in the course of levee inspections.

4      Plaintiffs allege that the PGL substantively changed the

5  Corps' policy on existing variances and has had direct, indirect,

6  and cumulative impacts on the environment including impacts to

7  listed species and critical habitats.

8      Plaintiffs allege that on about April 2, 2010, the Sacramento

9  Area Flood Control Agency ("SAFCA") and the Central Valley Flood

10 Protection Board formally applied to the Corps for a variance from

11 the standard vegetation guidelines set forth in the ETL as non-

12 federal sponsors of the American River Watershed Canyon Features

13 Project.  Plaintiffs aver that on about June 16, 2010, the Corps

14 approved in part and denied in part the variance request.

15 Plaintiffs further allege that on about December 30, 2010, in

16 rejecting a request from the California Department of Water

17 Resources ("DWR") to cease implementing the ETL, the Corps declared

18 "should there be information available that warrants a revision or

19 an improvement to the standards in the ETL, we will change the

20 standard.  However, until that time, the Corps will continue to

21 implement the current standards in the ETL."  FAC ¶ 39.

22     Plaintiffs allege that the Defendants' actions were final

23 agency actions, major federal actions, and rulemaking that require

24 compliance with the National Environmental Policy Act ("NEPA"), 42

25 U.S.C. § 4321 et seq., the Endangered Species Act ("ESA"), 16

26 U.S.C. 1531 et seq., and the Administrative Procedure Act ("APA"),

27 5 U.S.C. §§ 553, 701-706.  Plaintiffs contend that the Corps failed

28 to comply with those statutes.  Plaintiffs allege that the Corps

did not prepare an Environmental Impact Statement or an Environmental Assessment under NEPA before issuing the White Paper, ETL, Federal Registrar notice, or PGL.  Likewise, Plaintiffs allege that the Corps did not consult with the fish and wildlife agencies under the ESA.  Finally, Plaintiffs allege that the Corps did not provide notice and comment in violation of the APA.

Plaintiffs filed their Complaint (Doc. #1) on June 20, 2011. On July 27, 2011, Plaintiffs filed a Motion for Summary Judgment (Doc. #11).  The Court granted the Corps' motion to stay briefing on the summary judgment motion until the Court decides the Corps' Motion to Dismiss (Doc. #23).  On September 19, 2011, the Corps filed its Answer to Plaintiffs' Complaint (Doc. #24).  On October 10, 2011, Plaintiffs filed the FAC (Doc. #25) alleging three causes of action: (1) NEPA violations; (2) ESA violations; and (3) APA Violations.  On October 21, 2011, Defendants filed the instant Motion to Dismiss (Doc. #26) which included two exhibits and several attachments.  Plaintiffs oppose the Motion (Doc. #47) and object to the exhibits in the Motion (Doc. #48).

## II.   STATUTORY BACKGROUND

### A.   Administrative Procedure Act

The Administrative Procedure Act ("APA") provides that a "person suffering a legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial relief thereof."  5 U.S.C. § 702.  The APA provides that "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704.  In reviewing agency action, the court may set

1  aside the action only if it is "(A) arbitrary, capricious, an abuse

2  of discretion, or otherwise not in accordance with law . . .;

3  (C) in excess of statutory jurisdiction, authority, or limitations,

4  or short of statutory right; or (D) without observance of procedure

5  required by law."  5 U.S.C. § 706(2)(A), (C), (D).

6      B.   National Environmental Policy Act

7      The National Environmental Policy Act ("NEPA") has "twin aims.

8  First, it places upon [a federal] agency the obligation to consider

9  every significant aspect of the environmental impact of a proposed

10  action.  Second, it ensures that the agency will inform the public

11  that it has indeed considered environmental concerns in its

12  decisionmaking process."  Balt. Gas & Elec. Co. v. Natural Res.

13  Def. Council, Inc., 462 U.S. 87, 97 (1983) (citation and internal

14  quotation marks omitted).  NEPA does not contain substantive

15  environmental standards.  Rather, it "establishes 'action-forcing'

16  procedures that require agencies to take a 'hard look' at

17  environmental consequences."  Metcalf v. Daley, 214 F.3d 1135, 1141

18  (9th Cir. 2000).

19      NEPA requires federal agencies to prepare an Environmental

20  Impact Statement ("EIS") prior to taking "major Federal actions

21  significantly affecting the quality" of the environment.  42 U.S.C.

22  § 4332(2)(C).  Some proposed federal actions categorically require

23  the preparation of an EIS.  If the proposed action does not

24  categorically require the preparation of an EIS, the agency must

25  prepare an Environmental Assessment ("EA") to determine whether the

26  action will have a significant effect on the environment.  See 40

27  C.F.R. § 1501.4 (Council on Environmental Quality ("CEQ")

28  regulations implementing NEPA); Metcalf, 214 F.3d at 1142.  If the

1  EA reveals that the proposed action will significantly affect the

2  environment, then the agency must prepare an EIS.  If the EA

3  reveals no significant effect, the agency may issue a Finding of No

4  Significant Impact ("FONSI").  See 40 C.F.R. §§ 1501.4; see also

5  Metcalf, 214 F.3d at 1142.

6       C.   Endangered Species Act

7       The Endangered Species Act ("ESA") established a program for

8  conserving certain species listed by the Secretaries of the

9  Interior and Commerce as endangered or threatened species ("listed

10 species").  16 U.S.C. §§ 1531(b), 1532(6), (20), 1533.  Where an

11 agency determines that its action "may affect listed species or

12 designated critical habitat[,] 50 C.F.R. § 402.14(a), it must

13 pursue some form of consultation ("informal" or "formal"), with the

14 U.S. Fish and Wildlife Service ("USFWS") or the National Marine

15 Fisheries Service.  50 C.F.R. §§ 402.13, 402.14.  If the agency

16 determines that a particular action will have "no effect" on a

17 listed species or critical habitat, there is no consultation

18 requirement.  50 C.F.R. § 402.12; Sw. Ctr. For Biological Diversity

19 v. U.S. Forest Serv., 100 F.3d 1443, 1447 (9th Cir. 1996).

20

21                          III. OPINION

22      A.   Legal Standard

23           1.   Motion to Dismiss

24      Dismissal is appropriate under Rule 12(b)(1) when the District

25 Court lacks subject matter jurisdiction over the claim. Fed. R.

26 Civ. P. 12(b)(1).

27      When a defendant brings a motion to dismiss for lack of

28 subject matter jurisdiction pursuant to Rule 12(b)(1), the

plaintiff has the burden of establishing subject matter jurisdiction.  See Rattlesnake Coal. v. U.S. E.P.A., 509 F.3d 1095, 1102, n.1 (9th Cir. 2007) ("Once challenged, the party asserting subject matter jurisdiction has the burden of proving its existence.").

There are two permissible jurisdictional attacks under Rule 12(b)(1): a facial attack, where the court's inquiry is limited to the allegations in the complaint; or a factual attack, which permits the court to look beyond the complaint at affidavits or other evidence.  Savage v. Glendale Union High Sch., 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).  "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction, whereas in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."  Li v. Chertoff, 482 F.Supp.2d 1172, 1175 (S.D. Cal. 2007) (internal citations omitted).

If the moving party asserts a facial challenge, the court must assume that the factual allegations asserted in the complaint are true and construe those allegations in the light most favorable to the plaintiff.  Id. at 1175 (citing Warren v. Fox Family Worldwide, Inc., 328 F. 3d 1136, 1139 (9th Cir. 2003)).  If the moving party asserts a factual attack, a court may resolve the factual disputes by "look[ing] beyond the complaint to matters of public record, without having to convert the motion into one for summary judgment.  White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000).  The court "need not presume the truthfulness of the plaintiff's allegations."  Id.

However, "jurisdictional finding of genuinely disputed facts

1    is inappropriate when the jurisdictional issue and the substantive
2    issues are so intertwined that the question of jurisdiction is
3    dependent on the resolution of factual issues going to the 'merits'
4    of an action." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039
5    (9th Cir. 2004) (internal citations and quotations omitted).  The
6    question of jurisdiction and the merits of an action are
7    intertwined where "a statute provides the basis for both the
8    subject matter jurisdiction of the federal court and the
9    plaintiff's substantive claim for relief." Id. (internal citations
10   and quotations omitted).

11        B.   Evidentiary Objections

12        Defendants premise their Motion to Dismiss on a factual
13   challenge, arguing that this Court lacks subject matter
14   jurisdiction because the White Paper, ETL, and PGL, whether taken
15   separately or together, do not constitute reviewable final agency
16   action and are not substantive rules.  Because Defendants base
17   their Motion to Dismiss on a factual challenge, they attach two
18   exhibits and several attachments for the Court to consider.

19        Plaintiffs object to all the exhibits.  See Doc. #48.
20   Plaintiffs provide three main arguments why the Court should strike
21   these exhibits: (1) the Court should not consider materials outside
22   the complaint on a motion to dismiss, so the documents are not
23   relevant to the instant motion; (2) the documents are not
24   admissible under Federal Rule of Evidence 402 because the
25   provisions of the Administrative Procedure Act ("APA"), 5 U.S.C.
26   § 706, require review of administrative decisions based on the
27   whole record and Defendants' exhibits constitute part, but not all,
28   of the administrative record; (3) the Rabbon declaration is

1  irrelevant to the instant motion because it is not based on

2  personal knowledge and the opinions offered are without foundation

3  as to any relevant expertise, in violation of Federal Rule of

4  Evidence 702.

5      Defendants respond that the Court should consider its exhibits

6  and attachments.  See Doc. #50.  First, Defendants argue that the

7  exhibits are relevant because the Corps challenges some of the

8  Plaintiffs' factual allegations, and as such, the Court can

9  properly consider the documents attached to the Motion to Dismiss.

10 Additionally, Defendants argue that the factual allegations are not

11 so intertwined with the merits that the Court cannot resolve the

12 jurisdictional issues separately.  Secondly, Defendants argue that

13 the administrative record is not necessary to consider the instant

14 motion and that some of the documents attached to the Motion to

15 Dismiss post-date the alleged agency actions at issue, and

16 therefore, would likely not be part of the administrative record.

17 Defendants point out that Plaintiffs initially moved for summary

18 judgment on the basis of many of these same documents, arguing that

19 no administrative record was necessary for the Court to decide the

20 issues and asked the Court to take judicial notice of many of these

21 documents.  See Pls.' Notice of Mot. for Summ. J. (Doc. #11)

22 (asking the Court to take judicial notice of the White Paper and

23 ETL among other documents); Statement of Undisputed Facts in Supp.

24 of Mot. for Summ. J. & Req. for Judicial Notice (Doc. #11-2); Pls.

25 Opp'n. to Defs. Mot. to Stay (Doc. #21).  Finally, Defendants

26 contend that the Court can properly consider the Rabbon Declaration

27 because the declaration is based on his personal and official

28 knowledge and information and that he provides background

1   information and facts surrounding the Framework process.  In the

2   alternative, Defendants submit that the Court can decide the Motion

3   to Dismiss without considering the disputed documents; it could

4   decide that Plaintiffs lack standing or that Plaintiffs' claims are

5   an impermissible programmatic challenge without considering any

6   documents outside Plaintiffs' FAC.  The Court could also decide

7   that the ETL and PGL are not final agency actions and that the

8   Corps was not required to comply with the APA's formal rulemaking

9   procedures by considering only the ETL and draft variance policy.

10      Because Defendants assert a factual challenge to the Court's

11  subject matter jurisdiction, as discussed <u>supra</u>, the Court may

12  "look[] beyond the Complaint to matters of public record . . . [and

13  it] need not presume the truthfulness of the plaintiff's

14  allegations."  <u>White</u>, 227 F.3d at 1242.  Thus, the Court may

15  properly consider documents outside the complaint.

16      Here, the Court finds that Defendants' motion and exhibits are

17  arguments on merits issues, such as the presence or absence of

18  final agency action, whether rulemaking has occurred, and whether

19  the ETL was a new substantive rule or merely a reiteration and

20  clarification.  The issues "are so intertwined[,] that the question

21  of jurisdiction is dependent on the resolution of factual issues

22  going to the merits' of [the] action."  <u>Safe Air</u>, 373 F.3d at 1040.

23  Much of the evidence upon which these merits issues could be

24  decided is solely within the possession of Defendants.  Defendants

25  concede that the documents currently before the Court do not

26  constitute the complete administrative record.  To resolve these

27  questions, the Court must consider the entire administrative

28  record.  The Court cannot merely look to the face of the documents

1   to determine whether they are final agency actions or whether they

2   prescribe substantive rules.  "[T]o ensure fair review of an agency

3   action, [the Court] should have before it neither more nor less

4   information than did the agency when it made its decision."

5   Biodiversity Legal Found. v. Norton, 180 F.Supp.2d 7, 10 (D.D.C.

6   2001) (internal quotation omitted).  Additionally, Defendants

7   concede that the Court could decide the Motion to Dismiss without

8   considering some or all of the documents attached.

9        While the Court will not consider all of the documents

10  attached to the Motion to Dismiss because they form an incomplete

11  administrative record, the Court takes judicial notice of the ETL

12  and the White Paper as background materials.  The Court may take

13  judicial notice of facts that are "capable of accurate and ready

14  determination by resort to sources whose accuracy cannot reasonably

15  be questioned."  Fed. R. Evid. 201(b)(2).  The Court must take

16  judicial notice for a judicially noticeable fact "if requested by a

17  party and supplied with the necessary information."  Fed.R.Evid.

18  201(c)(2).  Additionally, both parties requested judicial notice of

19  these documents.  While it is appropriate for the Court to take

20  judicial notice of public records in this type of motion, the Court

21  is limiting its notice of these documents to background materials

22  and it will not rely on these documents to resolve any factual

23  dispute.  See U.S. v. 14.02 Acres or Land More or Less in Fresno

24  Cnty., 547 F.3d 943, 955 (9th Cir. 2008)(holding that district

25  court judge did not abuse its discretion in taking judicial notice

26  of a government study for the limited purpose of background

27  material without relying on it to resolve any factual dispute).

28  The Court elects to take judicial notice of these documents because

11

they are heavily relied upon by both parties and there is no

dispute as to the accuracy of the documents.  The parties disagree

as to whether the documents reflect final agency actions or

substantive rules.

As a final matter, the Court will not consider the Rabbon

Declaration.  Mr. Rabbon's declaration is not based on personal

knowledge and the opinions offered are without foundation as to any

relevant expertise.  See Fed.R.Evid. 702.

C.   Claims for Relief

1.   Final Agency Action

Defendants argue that Plaintiffs' NEPA and APA claims should

be dismissed because the Corps has not taken a final agency action

subject to review and that the ESA claim should be dismissed for

not identifying a discrete violation of the ESA.

Claims under the APA require the presence of a final agency

action.  Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 882-83

(1990).

> As a general matter, two conditions must be satisfied
> for agency action to be final: First, the action must
> mark the consummation of the agency's decisionmaking
> process – it must not be of a merely tentative or
> interlocutory nature.  And second, the action must be
> one by which rights or obligations have been
> determined, or from which legal consequences will
> flow.

Fairbanks N. Star Borough v. U.S. Army Corps of Engineers, 543 F.3d

586, 591 (9th Cir. 2008) (quoting Bennett v. Spear, 520 U.S. 154,

177-78 (1997)).

Defendants argue that the ETL is not a final agency action

because instead of marking the end of the agency's decisionmaking

process or determining legal rights and obligations, the ETL

provides guidelines to be considered in future decisionmaking and
contemplates further, site-specific action.  Defendants further
argue that the White Paper and PGL are not agency actions.
Defendants explain that the Corps developed the White Paper to
serve as a discussion paper outlining the treatment of vegetation
within local flood-damage-reduction systems and to recommend
further steps.  In the final section of the White Paper, Section 7
(titled "Recommendations"), the document lists recommended actions,
which Defendants contend are only recommendations, not final agency
actions.  Defendants further argue that the White Paper is marked
"Final Draft," and was never finalized as an official Corps
document or agency position.  Likewise, Defendants contend that the
PGL is not final agency action because it is explicitly a draft
document, is subject to change, and even once it is finalized, the
PGL would not be final agency action because it merely outlines the
variance process as opposed to dictating an outcome in any
particular case.  Finally, Defendants argue that taken together,
the three documents do not constitute final agency action.

     Plaintiffs counter that Defendants' actions are final agency
actions and major federal actions that require compliance with NEPA
and the ESA.  Plaintiffs argue that even if the ETL did not require
immediate changes on the ground, they aver in the FAC that real
consequences and impacts flow from these actions by changing the
status quo for existing variances and requiring a significant
change in vegetation management on existing levees.  With respect
to the PGL, Plaintiffs argue that they allege in the FAC that the
PGL has the force of law and that it established an interim rule.
Plaintiffs further argue that the Corps' actions constitute major

federal action subject to NEPA and that the ETL should have been subjected to NEPA compliance.  Similarly, Plaintiffs argue that the Corps' actions were agency actions subject to the ESA and that ESA consultation was required prior to the ETL, interim rule, and PGL's implementation.

Defendants analogize this case to <u>United States v. Alameda Gateway LTD.</u>, 213 F.3d 1161 (9th Cir. 2000).  In <u>Alameda Gateway</u>, the Ninth Circuit found that a Corps Engineer Regulation did not have the force and effect of law because its text indicated that it merely "memorializes the general policy."  <u>Id.</u> at 1168.  The Ninth Circuit further found that the Engineer Regulation did not have the force and effect of law because it "was not published in either the Code of Federal Regulations [("C.F.R.")] or the Federal Register, providing further evidence that the regulation was not intended to be binding."  <u>Id.</u>  Defendants argue that the ETL's language is similar to the Engineer Regulation, indicating that the ETL is a general policy statement, not a substantive rule.  The ETL, titled "Guidelines," states that it provides guidelines to "be used with reasonable judgment" and is tailored to the specifics of an individual project.  Moreover, Defendants argue that the ETL was not published in either the C.F.R. or the Federal Register.

Plaintiffs distinguish <u>Alameda Gateway</u> from the instant case by arguing that <u>Alameda Gateway</u> was brought by the Corps to recover costs associated with the removal of a pier by defendants; it was decided on summary judgment, not a motion to dismiss; it did not involved the APA, NEPA, or the ESA; and Plaintiffs are not challenging the vegetation standards themselves, rather Plaintiffs allege that the Corp adopted substantive changes in the rules for

14

1  levee management affecting the environment and listed species and

2  habitats without undertaking the required environmental review

3  under NEPA and consultation under the ESA.

4      The Court finds Plaintiffs' arguments persuasive – in <u>Alameda</u>

5  <u>Gateway</u>, the Ninth Circuit sua esponte raised the issue that it

6  "will not review allegations of noncompliance with an agency

7  statement that is not binding on the agency."  <u>Id.</u> at 1167.  The

8  court found that the regulation was not binding because the

9  Engineering Regulation was more of a policy statement and it was

10 not published.  However, the Ninth Circuit made this determination

11 at the summary judgment stage, presumably with the aid of the

12 administrative record to guide its decision.  Additionally, the

13 instant case is a procedural challenge and not a substantive

14 challenge, further distinguishing <u>Alameda Gateway</u>.

15     Like <u>Alameda Gateway</u>, most environmental cases considering

16 subject matter jurisdiction are decided only after reviewing the

17 administrative record, generally at the summary judgment stage.

18 <u>See</u> <u>e.g.</u> <u>River Runners for Wilderness v. Martin</u>, 593 F.3d 1064 (9th

19 Cir. 2010) (finding on a motion for summary judgment that the

20 defendant's policies do not proscribe substantive rules, and were

21 not promulgated in conformance with the procedures of the APA); <u>Or.</u>

22 <u>Natural Desert Ass'n v. U.S. Forest Service</u>, 465 F.3d 977 (9th Cir.

23 2006) (finding on a motion to dismiss, but after reviewing the full

24 administrative record, that the defendant's policies were final

25 within the meaning of the APA); <u>High Sierra Hikers Ass'n v.</u>

26 <u>Blackwell</u>, 390 F.3d 630 (9th Cir. 2004) (finding final agency

27 action and NEPA violations on a motion for summary judgment);

28 <u>Northcoast Envtl. Ctr. v. Glickman</u>, 136 F.3d 660 (9th Cir. 1998)

1   (finding on a motion for summary judgment that no environmental
2   impact statement was necessary).

3       Defendants rely on three cases, <u>Fairbanks N. Star Borough v.</u>
4   <u>U.S. Army Corps of Engineers</u>, 543 F.3d 586 (9th Cir. 2008),
5   <u>Rattlesnake Coal. v. U.S. E.P.A.</u>, 509 F.3d 1095 (9th Cir. 2007),
6   and <u>Inst. For Wildlife Prot. v. Norton</u>, 205 F.App'x 483, 485 (9th
7   Cir. 2006), in support of their argument that courts routinely
8   dismiss claims for lack of jurisdiction where there is not final
9   agency action within the meaning of the APA. These cases are
10  distinguishable from the instant case. In <u>Fairbanks</u>, a judgment on
11  the pleadings action, the Ninth Circuit determined that there was
12  no final agency action under the APA for purposes of judicial
13  review.  543 F.3d at 591.  In a judgment on the pleadings case,
14  unlike here, the court takes "all the allegations in the pleadings
15  as true."  <u>Id.</u>  Here, Defendants contradict Plaintiffs' pleadings
16  and ask the Court to consider outside evidence of a final agency
17  action.  <u>Rattlesnake Coalition </u>is distinguishable because the
18  primary issue in the case was whether there was sufficient federal
19  control over the contested policy.  The Ninth Circuit did not
20  address whether there was final agency action.  <u>See</u> 509 F.3d at
21  1105 (holding that only the federal government can be a proper
22  defendant in an action to compel compliance with NEPA).  Finally,
23  in <u>Institute for Wildlife Protection</u>, a terse Ninth Circuit
24  opinion, the Court held that the plaintiffs failed to challenge a
25  final agency action.  205 F.App'x at 485.  Aside from holding that
26  the plaintiffs asserted a programmatic challenge, not within the
27  district court's jurisdiction, the Ninth Circuit provides no other
28  reasoning for its decision.

Determining whether the ETL, PGL, and White Paper are final agency actions in the instant case requires a review of the full administrative record because, as discussed <u>supra</u>, "the question of jurisdiction is dependent on the resolution of factual issues going to the merits' of [the] action." <u>Safe Air for Everyone v. Meyer</u>, 373 F.3d 1035, 1040 (9th Cir. 2004). Therefore, because the Court requires the entire administrative record, it cannot, at this juncture, determine whether there has been final agency action. [2]

2.   <u>Programmatic Challenges</u>

Defendants argue that Plaintiffs' NEPA and APA claims should be dismissed because they are broad programmatic challenges. Defendants argue that Plaintiffs do not challenge discrete or final agency action, but the Corps' vegetation removal policy. Defendants contend that Plaintiffs do not challenge any site-

---

[2] The Court reviewed Plaintiffs' Notice of Supplemental Authority (Doc. #53) in which Plaintiffs supplied the Court with the recently issued <u>per curium</u> United States Supreme Court decision in the case of <u>Sackett v. E.P.A.</u>, 2012 U.S. LEXIS 2320 (U.S. Mar. 21, 2012). In <u>Sackett</u>, the Supreme Court held that property owners and other regulated parties may challenge administrative compliance orders issued by the Environmental Protection Agency ("EPA") under the Clean Water Act. The Court found that the compliance order "has all the hallmarks of APA finality." 2012 U.S. LEXIS 2320 at *9. The compliance order determined rights or obligations because the plaintiffs had the legal obligation to "'restore' their property according to an agency-approved Restoration Work Plan," they had to "give the EPA access to their property and to records and documentation related to the conditions at the Site," and "the order expose[d] the Sacketts to double penalties in a future enforcement proceeding." <u>Id.</u> at *10. The government argued that judicial review of the compliance order was unavailable unless and until the EPA filed a civil enforcement suit against them. <u>Id.</u> at *13-14. Unlike the present case, the government did not argue that the compliance order was a draft or was not a final decision. Here, the dispute concerns whether the ETL, PGL, and White Paper are final agency actions or draft recommendations. Once the Court considers the entire administrative record, it can turn to <u>Sackett</u>, among other authority, to determine whether the disputed documents constitute final agency action.

17

specific action.  Defendants continue that the three specific

examples Plaintiffs mention in their FAC do not prevent their

claims from being impermissible programmatic challenges because the

Plaintiffs do not make any specific allegations that the cited

actions were final, that the Corps violated NEPA, the APA, or the

ESA with regard to those instances, or that Plaintiffs were

themselves harmed by those actions.  Defendants argue that

Plaintiffs' requested relief is not tailored to any specific

project but seeks to enjoin nationwide standards and statewide

activity.  Defendants further argue that the ESA does not authorize

open-ended challenges and Plaintiffs' ESA claim does not fall

within the limited scope of the citizen management standard.

Defendants continue that the specific documents Plaintiffs

challenge do not have the force of law and do not have any force or

effect unless and until the Corps acts separately to apply them.

Plaintiffs counter that that they have challenged

identifiable, final agency actions within the meaning of the APA.

Plaintiffs argue that they seek vindication of procedural rights

conferred by NEPA, the ESA, and the APA, and the substantive

protections of the ESA.  Plaintiffs also argue that the nature of

the challenged actions cannot be determined in a 12(b)(1) motion.

The Supreme Court has made clear that the APA does not allow

"programmatic" challenges, but instead requires that Plaintiffs

contest a specific final agency action which has "an actual or

immediate threatened effect."  Lujan v. Nat'l Wildlife Fed'n, 497

U.S. 871, 882-94 (1990).  In Lujan, the plaintiffs alleged that the

defendants violated the Federal Land Policy Act, NEPA, and APA in

the administration of the "land withdrawal review program" of the

1   Bureau of Land Management, but failed to challenge any particular

2   agency action that caused harm.  Id. at 875, 891.  The Court held

3   that the "land withdrawal review program" was not an identifiable,

4   much less final, agency action or series of such actions within the

5   meaning of the APA.  Id. at 890.

6       Unlike the challenge in Lujan to the "land withdrawal review

7   program," Plaintiffs challenge identifiable, final agency actions

8   within the meaning of the APA.  Plaintiffs seek vindication of

9   procedural rights conferred by NEPA, ESA, and APA, and the

10  substantive protections of the ESA.  While the parties dispute

11  whether or not Defendants have issued final agency actions, if

12  through discovery, Plaintiffs can prove that the PGL, ESL, and

13  White Paper are final agency actions, then Plaintiffs' claims are

14  proper.

15      Furthermore, Defendants' argument that agency programs, as

16  opposed to specific decisions, are not subject to ESA compliance is

17  not persuasive.  "The Ninth Circuit has undeniably interpreted ESA

18  to require consultation on programmatic actions and rules,

19  including consultation at the planning stage, not just at the site-

20  specific stage."  Citizens for Better Forestry v. U.S. Dep't of

21  Agric., 481 F.Supp.2d 1059, 1095 (N.D.Cal. 2007); see also Pac.

22  Rivers Council, 30 F.3d 1050, 1055 (9th Cir. 1994)(holding that the

23  Forest Service's LRMPs which established comprehensible management

24  plans governing a multitude of individual projects required ESA

25  consultation because they may affect listed species).

26      Similarly, NEPA compliance is required even if the challenged

27  actions are part of a broad program.  Programmatic EISs have been

28  recognized and utilized in a number of cases before the Ninth

1   Circuit. See, e.g., N. Alaska Envtl. Ctr. v. Kempthorne, 457 F.3d

2   969 (9th Cir. 2006) (concluding that programmatic EIS prepared by

3   Forest Service with respect to oil and gas leasing in Alaskan

4   preserves was sufficiently site-specific even though it lacked

5   analysis of the effect on each parcel since there was no way of

6   knowing at time programmatic EIS was prepared what development

7   would materialize); Friends of Yosemite Valley v. Norton, 348 F.3d

8   789 (9th Cir. 2003) (discussing the distinction between site-

9   specific and programmatic EISs, and holding that programmatic EIS

10  prepared in conjunction with creation of a land management plan for

11  Yosemite was sufficient at the implementation stage and provided

12  guidelines for future actions); N. Alaska Envtl. Ctr. v. Lujan, 961

13  F.2d 886 (9th Cir. 1992) (holding programmatic EIS prepared in

14  conjunction with approval of mining in Alaskan parks was adequate).

15       The Ninth Circuit's recognition of the propriety of

16  programmatic EISs, and its distinction between the requirements for

17  programmatic EISs and site-specific EISs, suggests that, at least

18  in this circuit, NEPA's requirement of an EIS is not necessarily

19  limited to site or project-specific impacts or activities, as

20  Defendants suggest.  In recognizing programmatic EISs, the Ninth

21  Circuit has held that "[a]n EIS for a programmatic plan . . . must

22  provide 'sufficient detail to foster informed decision-making,' but

23  that 'site-specific impacts need not be fully evaluated until a

24  critical decision has been made to act on site development.'"

25  Friends of Yosemite, 348 F.3d at 800 (quoting Lujan, 961 F.2d at

26  890); see also California v. Block, 690 F.2d 752, 761 (9th Cir.

27  1982) (explaining that considerations regarding the adequacy of a

28  programmatic EIS may differ from those for a site-specific EIS).

1    Indeed, Plaintiffs' procedural challenges to the alleged

2    programmatic NEPA decisions are immediately ripe for review because

3    they "will influence subsequent site-specific actions" and "pre-

4    determine[] the future." <u>Laub v. U.S. Dep't of the Interior</u>, 342

5    F.3d 1080, 1088, 1091 (9th Cir. 2003).  Accordingly, the Court

6    finds that Plaintiffs' programmatic challenge is cognizable under

7    these statues.

8              3.  <u>Rulemaking</u>

9         Defendants argue that the Court should dismiss Plaintiffs'

10   third claim which alleges that the Corps violated the APA by

11   failing to complete formal rulemaking before adoption of new rules.

12   Defendants argue that the ETL sets forth "guidelines" to steer

13   future decisionmaking and is not a substantive rule that must

14   comply with the APA's notice and comment procedures.  Plaintiffs

15   respond that the ETL, interim rule, and PGL are substantive rules

16   because they are designed to implement and prescribe Corps

17   procedures and requirements for vegetation management on and near

18   levees throughout the United States.

19        Under the APA, an agency "'is required to follow prescribed

20   notice-and-comment procedures before promulgating substantive

21   rules.'" <u>Sacora v. Thomas</u>, 628 F.3d 1059, 1069 (9th Cir. 2010)

22   (quoting <u>Colwell v. Dep't of Health & Human Servs.</u>, 558 F.3d 1112,

23   1124 (9th Cir. 2009), <u>cert. denied</u>, 132 S. Ct. 152 (Oct. 3, 2011).

24   Notice and comment requirements are only for substantive rules, not

25   "'interpretive rules, general statements of policy, or rules of

26   agency organization, procedure, or practice.'" <u>Id.</u> (quoting <u>Mora-</u>

27   <u>Meraz v. Thomas</u>, 601 F.3d 933, 939 (9th Cir. 2010)).  "The

28   definition of a substantive rule is broad and includes action that

is legislative in nature, is primarily concerned with policy

considerations for the future rather than the evaluation of past

conduct, and looks not to the evidentiary facts but to policy-

making conclusions to be drawn from the facts." Coal. For Common

Sense in Gov't Procurement v. Sec'y of Veterans Affairs, 464 F.3d

1306, 1317 (Fed. Cir. 2006) (internal quotation omitted).

Here, Plaintiffs allege that the Corps adopted a new

vegetation management policy that supersedes prior guidance and the

Corps published in the Federal Register an interim rule that

explicitly revokes all prior variances.  Plaintiffs further allege

that the ETL does far more than reiterate and clarify the

vegetation management standards previously stated in EM 1110-2-301.

Defendants reply that the ETL is not binding because there is a

chance for a waiver or modification demonstrating that the policies

were only intended to provide guidance within the Park Service.

This argument, however, is a factual challenge concerning whether

the ETL is a substantive rule or a guideline, and the Court cannot

resolve this issue without the full administrative record.  Thus,

the Court is unable to decide this rulemaking issue until it has

had the opportunity to review the full administrative record.

4.  Ripeness

Defendants contend that in the alternative to their "no final

agency action" argument, this Court lacks jurisdiction because none

of Plaintiffs' claims are ripe.  Defendants argue that Plaintiffs

have not targeted a concrete application of any of the Corps'

policies.  Defendants contend that they are still considering

revisions to their variance policy, and the Corps and California

state and local agencies are jointly developing a comprehensive,

long term program to upgrade and manage vegetation on Central
Valley flood management systems, including levees eligible for the
Rehabilitation and Inspection Program ("RIP").  Defendants argue
that Plaintiffs cannot show they will suffer "immediate, direct, or
significant hardship" if judicial review is delayed because it has
not been determined which sponsors of levee systems now enrolled in
the RIP might act to remove vegetation in order to comply with the
ETL's vegetation standard.  Those decisions, according to
Defendants, depend on any number of future decisions by the Corps
and the individual levee sponsors.  Furthermore, Defendants claim
that Plaintiffs have not articulated any hardship from delaying
judicial review until it becomes clear whether and how the ETL's
vegetation standards will be applied to any particular levee
system, especially the levees in the Central Valley, and how that
specific application of the vegetation standard causes tangible
harm to Plaintiffs.  Moreover, judicial intervention at this stage
would, in Defendants' view, inappropriately interfere with ongoing
administrative action on both national and local bases.  Finally,
Defendants argue that the effects and application of the ETL and
the Corps' policies are speculative on the existing record;
Plaintiffs do not challenge the application of the Corps' policies
to any particular levee system, but rather they challenge the
policies on a programmatic basis and in their potential
application.

      Plaintiffs respond that Defendants' argument on ripeness
ignores the tangible procedural injuries alleged by Plaintiffs due
to the Corps' failure to undertake timely NEPA and ESA review.
Plaintiffs further argue that environmental plaintiffs need not

1   wait for environmental damage to occur to challenge an agency's

2   NEPA compliance.

3       The basic rationale of ripeness is "to prevent the courts,

4   through avoidance of premature adjudication, from entangling

5   themselves in abstract disagreements over administrative policies,

6   and also to protect the agencies from judicial interference until

7   an administrative decision has been formalized and its effects felt

8   in a concrete way by the challenging parties." Abbott Labs. v.

9   Gardner, 387 U.S. 136, 148-49 (1967).  In assessing ripeness, a

10  court considers: "(1) whether delayed review would cause hardship

11  to the plaintiffs; (2) whether judicial intervention would

12  inappropriately interfere with further administrative action; and

13  (3) whether the courts would benefit from further factual

14  development of the issues presented." Ohio Forestry Ass'n, Inc. v.

15  Sierra Club, 523 U.S. 726, 733 (1998).

16      Defendants primarily rely on Ohio Forestry Ass'n, Inc. v.

17  Sierra Club, 523 U.S. 726 (1998) to argue that the case is not

18  ripe.  However, as Plaintiffs point out, Ohio Forestry is

19  distinguishable from the current case because Plaintiffs allege

20  procedural injuries due to the Corps' alleged failure to undertake

21  timely NEPA and ESA review.  The plaintiffs in Ohio Forestry

22  alleged a substantive statutory violation; they did not allege a

23  procedural NEPA violation.  The Plaintiffs in this case, however,

24  allege that Defendants violated NEPA, ESA, and APA for failure to

25  comply with the procedural requirements.  As the Supreme Court

26  explained in Ohio Forestry, "NEPA, . . . simply guarantees a

27  particular procedure, not a particular result. . . . [A] person

28  with standing who is injured by a failure to comply with the NEPA

procedure may complain of that failure at the time the failure takes place, for the claim can never get riper." Id. at 737.  "The rights conferred by NEPA [and the ESA] are procedural rather than substantive, and plaintiffs allege a procedural rather than substantive injury." Kern v. U.S. Bureau of Land Mgmt., 284 F.3d 1062, 1071 (9th Cir. 2002).  "If there was an injury under NEPA, it occurred when the allegedly inadequate EIS was promulgated.  That is, any NEPA violation (and any procedural injury) inherent in the [alleged lack of an EA or EIS] ha[s] already occurred." Id. Furthermore, adjudicating the NEPA and ESA claims now will not "inappropriately interfere with further administrative action" because Defendants allegedly have already surpassed the stage in which they should have issued the EA, EIS, or engaged in their ESA consultation.  Id.

Furthermore, the Ninth Circuit has repeatedly held that environmental plaintiffs need not wait for environmental damage to occur to challenge an agency's NEPA compliance.  See Cal. ex. Rel. Lockyer v. U.S. Dept. of Agric., 575 F.3d 999, 1011 (9th Cir. 2009) (finding matter ripe for adjudication where it would be plaintiffs only opportunity to challenge a rule on a nationwide, programmatic basis); Kern, 284 F.3d at 1078 (warning against the "tyranny of small decisions" by holding that "[a]n agency may not avoid an obligation to analyze in an EIS environmental consequences that foreseeably arise from [a program] merely by saying that the consequences are unclear or will be analyzed later when an EA is prepared for a site-specific program"); Idaho Conservation League v. Mumma, 956 F.2d 1508, 1516 (9th Cir. 1992) ("[I]f the agency action could be challenged at the site-specific development stage,

1   the underlying programmatic authorization would forever escape

2   review.  To the extent that the plan pre-determines the future, it

3   represents a concrete injury the plaintiffs must, at some point,

4   have standing to challenge."); Salmon River Concerned Citizens v.

5   Robertson, 32 F.3d 1346, 1355 (9th Cir. 1994) (finding NEPA

6   challenge to regional EIS on herbicide use ripe for review).

7        Accordingly, Plaintiffs' claims are ripe for review.

8        D.   Standing

9        Defendants argue that Plaintiffs lack standing to challenge

10   the ETL, PGL, or the program they allege arises from the two

11   policies because there is no live dispute over a specific concrete

12   application of those particular policies.  Defendants argue that

13   Plaintiffs' alleged procedural injuries are not concrete injuries

14   and that Plaintiffs do not aver any concrete and immediate injury

15   because they fail to identify any particular situation where the

16   Corps is applying the challenged policies to compel the removal of

17   all vegetation from any levee system.

18        Plaintiffs argue that where procedural violations are at

19   issue, they do not need to demonstrate any actual environmental

20   harm to establish standing; an increased risk of harm resulting

21   from Defendants' action or omissions is sufficient.  Plaintiffs

22   argue that the Ninth Circuit has repeatedly recognized "increased

23   risk" of injury as supporting standing in NEPA cases and harm

24   cognizable for the purposes of standing in ESA cases is found where

25   there is added risk to species when an agency makes a decision in

26   violation of the ESA's consultation requirements.

27        Where procedural violations are at issue, in order "to show a

28   cognizable injury in fact, [Plaintiffs] must allege that

26

(1) [Defendants] violated certain procedural rules; (2) these rules protect [Plaintiffs'] concrete interests; and (3) it is reasonably probable that the challenged action will threaten their concrete interests." Citizens for Better Forestry v. U.S. Dep't. of Agric., 341 F.3d 961, 969-70 (9th Cir. 2003). Plaintiffs do not have the burden to show that harm will in fact occur or already has occurred from the challenged actions. See id. at 972 (explaining that if a plaintiff's standing under NEPA depended on "'proof' that the challenged federal project will have particular environmental effects, we would in essence be requiring that the plaintiff conduct the same environmental investigation that he seeks in his suit to compel the agency to undertake.").

Plaintiffs allege that the Corps has not complied with the procedural requirements of NEPA and the APA rulemaking statutes or the procedural and substantive mandate found in ESA Section 7, and that these statutes protect plaintiffs' concrete interests. Plaintiffs' members also testify to their interests in NEPA and ESA compliance. See Second Decl. of Jeffrey Miller ("Second Miller Decl.") (Doc. #47-3) ¶¶ 10, 11; Decl. of Kelly L. Catlett in Supp. of Pls.' Opp'n to Defs.' Mot. to Dismiss ("Catlett Decl.") (Doc. #47-2) ¶ 11. Plaintiffs' members testify that they use and enjoy affected rivers and levees for aesthetic and recreational purposes, fishing, boating, bird watching, rafting, biking, enjoying the scenic beauty the river and trees provide, and observing species and that their interests at stake include the prevention of environmental damage to these areas as well as the preservation of endangered and threatened species that are found there. See Second Miller Decl. ¶ 10; Catlett Decl. ¶¶ 3-4. They also testified that

the Corps' action has, and may in the future, destroy the values they derive from the rivers, levees, and species that inhabit these areas.  See, e.g., Second Miller Decl. ¶ 11; Catlett Decl. ¶¶ 5-10. Therefore, Plaintiffs have shown it is reasonably probable that the challenged actions will threaten Plaintiffs' concrete interests.

Defendants' objection centers on the merits of the claims and whether or not NEPA, ESA, or APA's statutory requirements are applicable to the Corps' challenged action, which, Defendants contend, are part of a program or policy.  However, the Ninth Circuit has long recognized standing to challenge NEPA compliance for programmatic decisions.  See, e.g. Pac. Rivers Council v. U.S. Forest Serv., 668 F.3d 609, 617-21 (9th Cir. 2012) (finding standing to challenge programmatic forest plan); Sierra Forest Legacy v. Sherman, 646 F.3d 1161, 1179-80 n.2 (9th Cir. 2011) (finding standing to bring a facial challenge without challenge to site specific implementation and explaining procedural injury under NEPA was ripe for facial challenge); Salmon River Concerned Citizens v. Robertson, 32 F.3d 1346, 1355 (9th Cir. 1994) (finding standing where a vegetation management plan failed to comply with NEPA).

Furthermore, Plaintiffs have demonstrated concrete interests that meet the geographical nexus requirement for standing.  The Ninth Circuit has described the concrete interests test as requiring a geographic nexus between the individual asserting the claim and the location suffering an environmental impact." Western Watersheds Project v. Kraayenbrink, 632 F.3d 472, 485 (9th Cir. 2011) (citations omitted).  "[E]nvironmental plaintiffs must allege that they will suffer harm by virtue of their geographic proximity

to and use of areas that will be affected by the [challenged]
policy." Citizens for Better Forestry, 341 F.3d at 971 (holding
plaintiffs met the geographic nexus requirement where they
"properly alleged, and supported with numerous affidavits" their
members' use and enjoyment of a "vast range of national forests").

Plaintiffs have alleged that the Corps' actions may affect a
very large number of rivers, levees, and species throughout
California including the places which Plaintiffs use and enjoy and
many of the species in which Plaintiffs have alleged concrete
interests. Plaintiffs' members testify to their use of specific
areas that have been or may be affected, their interests in
vegetation on levees, the health of the riparian areas, and species
that depend on riparian areas, and species that depend on riparian
areas and many of the river systems with levees which may be
affected by the Corps' challenged actions. See, e.g., Catlett
Decl. ¶¶ 3, 5-10 and Second Miller Decl. ¶¶ 4-6. While Defendants
argue that that Plaintiffs must identify the imminent projects that
threaten harm to their concrete interests at the outset of the
litigation, as Plaintiffs point out, the full extent of the harm
and injury to Plaintiffs' members is unknown due to the Corps'
alleged failure to comply with NEPA or the APA rulemaking
procedures, and to formally consult with wildlife agencies on
potential impacts to endangered species pursuant to the ESA, prior
to adopting the ETL and interim rule. Plaintiffs "need not assert
that any specific injury will occur in any specific [levee] that
their members will visit. 'The asserted injury is that
environmental consequences might be overlooked' as a result of
deficiencies in the government's analysis under environmental

29

1  statutes."  Citizens for Better Forestry, 341 F.3d at 971-72

2  (quoting Salmon River Concerned Citizens v. Robertson, 32 F.3d

3  1346, 1355 (9th Cir. 1994)); see also Res. Ltd., Inc. v. Robertson,

4  35 F.3d 1300, 1302-03 (9th Cir. 1993) (holding that plaintiffs had

5  standing to challenge a forest plan even though they could not

6  point to any specific site where the injury is likely to occur).

7      Defendants' reliance on P.E.T.A. v. U.S. Dep't of Health &

8  Human Services, 917 F.2d 15, 17 (9th Cir. 1990), where plaintiffs'

9  allegations were found wanting at the summary judgment stage, is

10  distinguishable.  In that case, the court found failure to

11  establish standing on a summary judgment motion based on

12  declarations which failed to adequately assert personal injury or

13  harm from grant of funds to research institutions.  Here, to

14  survive this motion to dismiss, Plaintiffs must plead "enough facts

15  to state a claim to relief that is plausible on its face."  Bell

16  Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  Plaintiffs

17  provide declarations sufficiently asserting injury and harm

18  stemming from Defendants' actions.

19      The types of harm and injury Plaintiffs' members testify to

20  are cognizable for purposes of standing.  Plaintiffs have standing

21  because the alleged injury "is geographically specific, is caused

22  by the regulations at issue, and is imminent."  Ctr. for Biological

23  Diversity, 588 F.3d at 708.

24      Finally, Plaintiffs have demonstrated causation and

25  redressability.  In a procedural challenge, Plaintiffs can assert

26  their right to protect a concrete interest "without meeting all the

27  normal standards for redressability and immediacy."  Lujan, 504

28  U.S. at 572 n.7.  Plaintiffs "must show only that they have a

1 procedural right that, if exercised, could protect their concrete

2 interest." <u>W. Watersheds Project v. Kraayenbrink</u>, 632 F.3d, 485

3 (9th Cir. 2011) (citations omitted).  Plaintiffs seek an order

4 requiring the Corps to comply with NEPA, the ESA, and APA

5 rulemaking procedures, any of which may relieve some or all of

6 Plaintiffs' injuries.  To satisfy the causation and redressability

7 requirement for procedural injury purposes, Plaintiffs need not

8 show that compliance with ESA, APA, and NEPA will ultimately

9 redress their injuries, only that compliance with these

10 requirements may redress the injury.  Accordingly, Plaintiffs have

11 sufficiently alleged standing.

12

13                    IV.   ORDER

14      For the reasons set forth above,

15      The Court DENIES Defendants' Motion to Dismiss.

16      Defendants shall file their Answer to Plaintiffs' First

17 Amended Complaint within twenty (20) days of the date of this

18 Order.

19      IT IS SO ORDERED.

20 Dated: April 27, 2012

21                    JOHN A. MENDEZ,
                      UNITED STATES DISTRICT JUDGE

22

23

24

25

26

27

28