UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| FRIENDS OF THE RIVER, a non-profit corporation, DEFENDERS OF WILDLIFE, a non-profit corporation, and CENTER FOR BIOLOGICAL DIVERSITY, a non-profit corporation, | ) ) ) ) ) ) ) | Case No. 2:11-CV-01650 JAM-JFM |
| Plaintiffs, | ) ) | ORDER DENYING DEFENDANTS' MOTON TO DISMISS |
| v. | ) ) ) | |
| UNITED STATES ARMY CORPS OF ENGINEERS, and MAJOR GENERAL MEREDITH W.B. TEMPLE, in his official capacity, | ) ) ) ) ) | |
| Defendants. | ) | |

Before the Court is Defendants' United States Army Corps of Engineers and Major General Meredith W.B. Temple, (collectively "the Corps" or "Defendants"), Motion to Dismiss (Doc. #26) the First Amended Complaint ("FAC," Doc. #25) filed by Plaintiffs Friends of the River, Defenders of Wildlife, and the Center for Biological Diversity, (collectively "Plaintiffs"). Plaintiffs oppose the motion (Doc. #47).[1]

---

[1] This motion was determined to be suitable for decision without oral argument. E.D. Cal. L.R. 230(g). The hearing was scheduled for February 22, 2012.

1                    I.   FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

2          Plaintiffs allege that for decades the Corps has allowed,

3    encouraged, and, in some cases, required the planting of trees and

4    vegetation on levees for environmental purposes, including habitat

5    preservation.   Plaintiffs allege that the Corps reversed course

6    when it issued the "Final Draft White Paper: Treatment of

7    Vegetation within Local Flood Damage-Reduction Systems" ("White

8    Paper") on April 20, 2007.   Plaintiffs contend the White Paper

9    calls for a vegetative-free-zone for all levees.

10         Plaintiffs allege that Defendants changed the regulatory and

11   environmental status quo when they adopted Engineer Technical

12   Letter 1110-2-571 ("ETL"), allegedly replacing EM 1110-2-301, on

13   April 10, 2009 and again ten months later when they produced the

14   draft Environmental Assessment/Finding of No Significant Impact on

15   February 9, 2010 for the "Policy Guidance Letter – Variance from

16   Vegetation Standards for Levees in Floodwalls" ("PGL").   Plaintiffs

17   allege that through a Federal Register Notice ("Federal Register

18   Notice") the PGL acknowledged that the ETL Guidelines establish

19   "mandatory vegetation-management standards for levees."   75 Fed.

20   Reg. at 6364.

21         The ETL establishes "Guidelines for Landscape Planting and

22   Vegetation Management at Levees, Floodwalls, Embankment Dams, and

23   Appurtenant Structures."   Plaintiffs aver that the ETL prohibits

24   all vegetation except grass, requires a vegetation-free zone 15

25   feet to each side of a levee, and requires removal of all non-

26   compliant vegetation.   The ETL, according to Plaintiffs, requires

27   levee operators to seek a variance to retain non-compliant

28   vegetation for environmental purposes.   Plaintiffs further allege

that the Corps itself described the ETL standards as "mandatory" in the Federal Register and the Corps is currently implementing the ETL in California in the course of levee inspections.

Plaintiffs allege that the PGL substantively changed the Corps' policy on existing variances and has had direct, indirect, and cumulative impacts on the environment including impacts to listed species and critical habitats.

Plaintiffs allege that on about April 2, 2010, the Sacramento Area Flood Control Agency ("SAFCA") and the Central Valley Flood Protection Board formally applied to the Corps for a variance from the standard vegetation guidelines set forth in the ETL as non-federal sponsors of the American River Watershed Canyon Features Project. Plaintiffs aver that on about June 16, 2010, the Corps approved in part and denied in part the variance request. Plaintiffs further allege that on about December 30, 2010, in rejecting a request from the California Department of Water Resources ("DWR") to cease implementing the ETL, the Corps declared "should there be information available that warrants a revision or an improvement to the standards in the ETL, we will change the standard. However, until that time, the Corps will continue to implement the current standards in the ETL." FAC ¶ 39.

Plaintiffs allege that the Defendants' actions were final agency actions, major federal actions, and rulemaking that require compliance with the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 et seq., the Endangered Species Act ("ESA"), 16 U.S.C. 1531 et seq., and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 553, 701-706. Plaintiffs contend that the Corps failed to comply with those statutes. Plaintiffs allege that the Corps

did not prepare an Environmental Impact Statement or an
Environmental Assessment under NEPA before issuing the White Paper,
ETL, Federal Registrar notice, or PGL.  Likewise, Plaintiffs allege
that the Corps did not consult with the fish and wildlife agencies
under the ESA.  Finally, Plaintiffs allege that the Corps did not
provide notice and comment in violation of the APA.

Plaintiffs filed their Complaint (Doc. #1) on June 20, 2011.
On July 27, 2011, Plaintiffs filed a Motion for Summary Judgment
(Doc. #11).  The Court granted the Corps' motion to stay briefing
on the summary judgment motion until the Court decides the Corps'
Motion to Dismiss (Doc. #23).  On September 19, 2011, the Corps
filed its Answer to Plaintiffs' Complaint (Doc. #24).  On October
10, 2011, Plaintiffs filed the FAC (Doc. #25) alleging three causes
of action: (1) NEPA violations; (2) ESA violations; and (3) APA
Violations.  On October 21, 2011, Defendants filed the instant
Motion to Dismiss (Doc. #26) which included two exhibits and
several attachments.  Plaintiffs oppose the Motion (Doc. #47) and
object to the exhibits in the Motion (Doc. #48).

II.  STATUTORY BACKGROUND

A.  Administrative Procedure Act

The Administrative Procedure Act ("APA") provides that a
"person suffering a legal wrong because of agency action, or
adversely affected or aggrieved by agency action within the meaning
of a relevant statute, is entitled to judicial relief thereof."  5
U.S.C. § 702.  The APA provides that "[a]gency action made
reviewable by statute and final agency action for which there is no
other adequate remedy in a court are subject to judicial review."
5 U.S.C. § 704.  In reviewing agency action, the court may set

1   aside the action only if it is "(A) arbitrary, capricious, an abuse

2   of discretion, or otherwise not in accordance with law . . .;

3   (C) in excess of statutory jurisdiction, authority, or limitations,

4   or short of statutory right; or (D) without observance of procedure

5   required by law."  5 U.S.C. § 706(2)(A), (C), (D).

6        B.   National Environmental Policy Act

7        The National Environmental Policy Act ("NEPA") has "twin aims.

8   First, it places upon [a federal] agency the obligation to consider

9   every significant aspect of the environmental impact of a proposed

10  action.  Second, it ensures that the agency will inform the public

11  that it has indeed considered environmental concerns in its

12  decisionmaking process."  Balt. Gas & Elec. Co. v. Natural Res.

13  Def. Council, Inc., 462 U.S. 87, 97 (1983) (citation and internal

14  quotation marks omitted).  NEPA does not contain substantive

15  environmental standards.  Rather, it "establishes 'action-forcing'

16  procedures that require agencies to take a 'hard look' at

17  environmental consequences."  Metcalf v. Daley, 214 F.3d 1135, 1141

18  (9th Cir. 2000).

19       NEPA requires federal agencies to prepare an Environmental

20  Impact Statement ("EIS") prior to taking "major Federal actions

21  significantly affecting the quality" of the environment.  42 U.S.C.

22  § 4332(2)(C).  Some proposed federal actions categorically require

23  the preparation of an EIS.  If the proposed action does not

24  categorically require the preparation of an EIS, the agency must

25  prepare an Environmental Assessment ("EA") to determine whether the

26  action will have a significant effect on the environment.  See 40

27  C.F.R. § 1501.4 (Council on Environmental Quality ("CEQ")

28  regulations implementing NEPA); Metcalf, 214 F.3d at 1142.  If the

1    EA reveals that the proposed action will significantly affect the

2    environment, then the agency must prepare an EIS.  If the EA

3    reveals no significant effect, the agency may issue a Finding of No

4    Significant Impact ("FONSI").  See 40 C.F.R. §§ 1501.4; see also

5    Metcalf, 214 F.3d at 1142.

6         C.    Endangered Species Act

7         The Endangered Species Act ("ESA") established a program for

8    conserving certain species listed by the Secretaries of the

9    Interior and Commerce as endangered or threatened species ("listed

10   species").  16 U.S.C. §§ 1531(b), 1532(6), (20), 1533.  Where an

11   agency determines that its action "may affect listed species or

12   designated critical habitat[,] 50 C.F.R. § 402.14(a), it must

13   pursue some form of consultation ("informal" or "formal"), with the

14   U.S. Fish and Wildlife Service ("USFWS") or the National Marine

15   Fisheries Service.  50 C.F.R. §§ 402.13, 402.14.  If the agency

16   determines that a particular action will have "no effect" on a

17   listed species or critical habitat, there is no consultation

18   requirement.  50 C.F.R. § 402.12; Sw. Ctr. For Biological Diversity

19   v. U.S. Forest Serv., 100 F.3d 1443, 1447 (9th Cir. 1996).

20

21                        III. OPINION

22        A.    Legal Standard

23             1.    Motion to Dismiss

24        Dismissal is appropriate under Rule 12(b)(1) when the District

25   Court lacks subject matter jurisdiction over the claim. Fed. R.

26   Civ. P. 12(b)(1).

27        When a defendant brings a motion to dismiss for lack of

28   subject matter jurisdiction pursuant to Rule 12(b)(1), the

1  plaintiff has the burden of establishing subject matter

2  jurisdiction.  See Rattlesnake Coal. v. U.S. E.P.A., 509 F.3d 1095,

3  1102, n.1 (9th Cir. 2007) ("Once challenged, the party asserting

4  subject matter jurisdiction has the burden of proving its

5  existence.").

6      There are two permissible jurisdictional attacks under Rule

7  12(b)(1): a facial attack, where the court's inquiry is limited to

8  the allegations in the complaint; or a factual attack, which

9  permits the court to look beyond the complaint at affidavits or

10  other evidence.  Savage v. Glendale Union High Sch., 343 F.3d 1036,

11  1039 n.2 (9th Cir. 2003).  "In a facial attack, the challenger

12  asserts that the allegations contained in a complaint are

13  insufficient on their face to invoke federal jurisdiction, whereas

14  in a factual attack, the challenger disputes the truth of the

15  allegations that, by themselves, would otherwise invoke federal

16  jurisdiction."  Li v. Chertoff, 482 F.Supp.2d 1172, 1175 (S.D. Cal.

17  2007) (internal citations omitted).

18      If the moving party asserts a facial challenge, the court must

19  assume that the factual allegations asserted in the complaint are

20  true and construe those allegations in the light most favorable to

21  the plaintiff.  Id. at 1175 (citing Warren v. Fox Family Worldwide,

22  Inc., 328 F. 3d 1136, 1139 (9th Cir. 2003)).  If the moving party

23  asserts a factual attack, a court may resolve the factual disputes

24  by "look[ing] beyond the complaint to matters of public record,

25  without having to convert the motion into one for summary judgment.

26  White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000).  The court "need

27  not presume the truthfulness of the plaintiff's allegations."  Id.

28      However, "jurisdictional finding of genuinely disputed facts

1   is inappropriate when the jurisdictional issue and the substantive

2   issues are so intertwined that the question of jurisdiction is

3   dependent on the resolution of factual issues going to the 'merits'

4   of an action."  Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039

5   (9th Cir. 2004) (internal citations and quotations omitted).  The

6   question of jurisdiction and the merits of an action are

7   intertwined where "a statute provides the basis for both the

8   subject matter jurisdiction of the federal court and the

9   plaintiff's substantive claim for relief."  Id. (internal citations

10  and quotations omitted).

11      B.   Evidentiary Objections

12      Defendants premise their Motion to Dismiss on a factual

13  challenge, arguing that this Court lacks subject matter

14  jurisdiction because the White Paper, ETL, and PGL, whether taken

15  separately or together, do not constitute reviewable final agency

16  action and are not substantive rules.  Because Defendants base

17  their Motion to Dismiss on a factual challenge, they attach two

18  exhibits and several attachments for the Court to consider.

19      Plaintiffs object to all the exhibits.  See Doc. #48.

20  Plaintiffs provide three main arguments why the Court should strike

21  these exhibits: (1) the Court should not consider materials outside

22  the complaint on a motion to dismiss, so the documents are not

23  relevant to the instant motion; (2) the documents are not

24  admissible under Federal Rule of Evidence 402 because the

25  provisions of the Administrative Procedure Act ("APA"), 5 U.S.C.

26  § 706, require review of administrative decisions based on the

27  whole record and Defendants' exhibits constitute part, but not all,

28  of the administrative record; (3) the Rabbon declaration is

1    irrelevant to the instant motion because it is not based on

2    personal knowledge and the opinions offered are without foundation

3    as to any relevant expertise, in violation of Federal Rule of

4    Evidence 702.

5        Defendants respond that the Court should consider its exhibits

6    and attachments.  See Doc. #50.  First, Defendants argue that the

7    exhibits are relevant because the Corps challenges some of the

8    Plaintiffs' factual allegations, and as such, the Court can

9    properly consider the documents attached to the Motion to Dismiss.

10   Additionally, Defendants argue that the factual allegations are not

11   so intertwined with the merits that the Court cannot resolve the

12   jurisdictional issues separately.  Secondly, Defendants argue that

13   the administrative record is not necessary to consider the instant

14   motion and that some of the documents attached to the Motion to

15   Dismiss post-date the alleged agency actions at issue, and

16   therefore, would likely not be part of the administrative record.

17   Defendants point out that Plaintiffs initially moved for summary

18   judgment on the basis of many of these same documents, arguing that

19   no administrative record was necessary for the Court to decide the

20   issues and asked the Court to take judicial notice of many of these

21   documents.  See Pls.' Notice of Mot. for Summ. J. (Doc. #11)

22   (asking the Court to take judicial notice of the White Paper and

23   ETL among other documents); Statement of Undisputed Facts in Supp.

24   of Mot. for Summ. J. & Req. for Judicial Notice (Doc. #11-2); Pls.

25   Opp'n. to Defs. Mot. to Stay (Doc. #21).  Finally, Defendants

26   contend that the Court can properly consider the Rabbon Declaration

27   because the declaration is based on his personal and official

28   knowledge and information and that he provides background

9

1    information and facts surrounding the Framework process.   In the

2    alternative, Defendants submit that the Court can decide the Motion

3    to Dismiss without considering the disputed documents; it could

4    decide that Plaintiffs lack standing or that Plaintiffs' claims are

5    an impermissible programmatic challenge without considering any

6    documents outside Plaintiffs' FAC.   The Court could also decide

7    that the ETL and PGL are not final agency actions and that the

8    Corps was not required to comply with the APA's formal rulemaking

9    procedures by considering only the ETL and draft variance policy.

10       Because Defendants assert a factual challenge to the Court's

11   subject matter jurisdiction, as discussed <u>supra</u>, the Court may

12   "look[] beyond the Complaint to matters of public record . . . [and

13   it] need not presume the truthfulness of the plaintiff's

14   allegations." <u>White</u>, 227 F.3d at 1242.   Thus, the Court may

15   properly consider documents outside the complaint.

16       Here, the Court finds that Defendants' motion and exhibits are

17   arguments on merits issues, such as the presence or absence of

18   final agency action, whether rulemaking has occurred, and whether

19   the ETL was a new substantive rule or merely a reiteration and

20   clarification.   The issues "are so intertwined[,] that the question

21   of jurisdiction is dependent on the resolution of factual issues

22   going to the merits' of [the] action." <u>Safe Air</u>, 373 F.3d at 1040.

23   Much of the evidence upon which these merits issues could be

24   decided is solely within the possession of Defendants.   Defendants

25   concede that the documents currently before the Court do not

26   constitute the complete administrative record.   To resolve these

27   questions, the Court must consider the entire administrative

28   record.   The Court cannot merely look to the face of the documents

to determine whether they are final agency actions or whether they

prescribe substantive rules.  "[T]o ensure fair review of an agency

action, [the Court] should have before it neither more nor less

information than did the agency when it made its decision."

Biodiversity Legal Found. v. Norton, 180 F.Supp.2d 7, 10 (D.D.C.

2001) (internal quotation omitted).  Additionally, Defendants

concede that the Court could decide the Motion to Dismiss without

considering some or all of the documents attached.

While the Court will not consider all of the documents

attached to the Motion to Dismiss because they form an incomplete

administrative record, the Court takes judicial notice of the ETL

and the White Paper as background materials.  The Court may take

judicial notice of facts that are "capable of accurate and ready

determination by resort to sources whose accuracy cannot reasonably

be questioned."  Fed. R. Evid. 201(b)(2).  The Court must take

judicial notice for a judicially noticeable fact "if requested by a

party and supplied with the necessary information."  Fed.R.Evid.

201(c)(2).  Additionally, both parties requested judicial notice of

these documents.  While it is appropriate for the Court to take

judicial notice of public records in this type of motion, the Court

is limiting its notice of these documents to background materials

and it will not rely on these documents to resolve any factual

dispute.  See U.S. v. 14.02 Acres or Land More or Less in Fresno

Cnty., 547 F.3d 943, 955 (9th Cir. 2008)(holding that district

court judge did not abuse its discretion in taking judicial notice

of a government study for the limited purpose of background

material without relying on it to resolve any factual dispute).

The Court elects to take judicial notice of these documents because

1   they are heavily relied upon by both parties and there is no

2   dispute as to the accuracy of the documents.  The parties disagree

3   as to whether the documents reflect final agency actions or

4   substantive rules.

5       As a final matter, the Court will not consider the Rabbon

6   Declaration.  Mr. Rabbon's declaration is not based on personal

7   knowledge and the opinions offered are without foundation as to any

8   relevant expertise.  See Fed.R.Evid. 702.

9       C.   Claims for Relief

10          1.   Final Agency Action

11      Defendants argue that Plaintiffs' NEPA and APA claims should

12   be dismissed because the Corps has not taken a final agency action

13   subject to review and that the ESA claim should be dismissed for

14   not identifying a discrete violation of the ESA.

15      Claims under the APA require the presence of a final agency

16   action.  Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 882-83

17   (1990).

18          As a general matter, two conditions must be satisfied
            for agency action to be final: First, the action must
19          mark the consummation of the agency's decisionmaking
            process – it must not be of a merely tentative or
20          interlocutory nature.  And second, the action must be
            one by which rights or obligations have been
21          determined, or from which legal consequences will
            flow.
22

23   Fairbanks N. Star Borough v. U.S. Army Corps of Engineers, 543 F.3d

24   586, 591 (9th Cir. 2008) (quoting Bennett v. Spear, 520 U.S. 154,

25   177-78 (1997)).

26      Defendants argue that the ETL is not a final agency action

27   because instead of marking the end of the agency's decisionmaking

28   process or determining legal rights and obligations, the ETL

provides guidelines to be considered in future decisionmaking and contemplates further, site-specific action.  Defendants further argue that the White Paper and PGL are not agency actions. Defendants explain that the Corps developed the White Paper to serve as a discussion paper outlining the treatment of vegetation within local flood-damage-reduction systems and to recommend further steps.  In the final section of the White Paper, Section 7 (titled "Recommendations"), the document lists recommended actions, which Defendants contend are only recommendations, not final agency actions.  Defendants further argue that the White Paper is marked "Final Draft," and was never finalized as an official Corps document or agency position.  Likewise, Defendants contend that the PGL is not final agency action because it is explicitly a draft document, is subject to change, and even once it is finalized, the PGL would not be final agency action because it merely outlines the variance process as opposed to dictating an outcome in any particular case.  Finally, Defendants argue that taken together, the three documents do not constitute final agency action.

Plaintiffs counter that Defendants' actions are final agency actions and major federal actions that require compliance with NEPA and the ESA.  Plaintiffs argue that even if the ETL did not require immediate changes on the ground, they aver in the FAC that real consequences and impacts flow from these actions by changing the status quo for existing variances and requiring a significant change in vegetation management on existing levees.  With respect to the PGL, Plaintiffs argue that they allege in the FAC that the PGL has the force of law and that it established an interim rule. Plaintiffs further argue that the Corps' actions constitute major

1  federal action subject to NEPA and that the ETL should have been

2  subjected to NEPA compliance.  Similarly, Plaintiffs argue that the

3  Corps' actions were agency actions subject to the ESA and that ESA

4  consultation was required prior to the ETL, interim rule, and PGL's

5  implementation.

6      Defendants analogize this case to United States v. Alameda

7  Gateway LTD., 213 F.3d 1161 (9th Cir. 2000).  In Alameda Gateway,

8  the Ninth Circuit found that a Corps Engineer Regulation did not

9  have the force and effect of law because its text indicated that it

10  merely "memorializes the general policy."  Id. at 1168.  The Ninth

11  Circuit further found that the Engineer Regulation did not have the

12  force and effect of law because it "was not published in either the

13  Code of Federal Regulations [("C.F.R.")] or the Federal Register,

14  providing further evidence that the regulation was not intended to

15  be binding."  Id.  Defendants argue that the ETL's language is

16  similar to the Engineer Regulation, indicating that the ETL is a

17  general policy statement, not a substantive rule.  The ETL, titled

18  "Guidelines," states that it provides guidelines to "be used with

19  reasonable judgment" and is tailored to the specifics of an

20  individual project.  Moreover, Defendants argue that the ETL was

21  not published in either the C.F.R. or the Federal Register.

22      Plaintiffs distinguish Alameda Gateway from the instant case

23  by arguing that Alameda Gateway was brought by the Corps to recover

24  costs associated with the removal of a pier by defendants; it was

25  decided on summary judgment, not a motion to dismiss; it did not

26  involved the APA, NEPA, or the ESA; and Plaintiffs are not

27  challenging the vegetation standards themselves, rather Plaintiffs

28  allege that the Corp adopted substantive changes in the rules for

1   levee management affecting the environment and listed species and

2   habitats without undertaking the required environmental review

3   under NEPA and consultation under the ESA.

4        The Court finds Plaintiffs' arguments persuasive – in Alameda

5   Gateway, the Ninth Circuit sua esponte raised the issue that it

6   "will not review allegations of noncompliance with an agency

7   statement that is not binding on the agency."  Id. at 1167.  The

8   court found that the regulation was not binding because the

9   Engineering Regulation was more of a policy statement and it was

10  not published.  However, the Ninth Circuit made this determination

11  at the summary judgment stage, presumably with the aid of the

12  administrative record to guide its decision.  Additionally, the

13  instant case is a procedural challenge and not a substantive

14  challenge, further distinguishing Alameda Gateway.

15       Like Alameda Gateway, most environmental cases considering

16  subject matter jurisdiction are decided only after reviewing the

17  administrative record, generally at the summary judgment stage.

18  See e.g. River Runners for Wilderness v. Martin, 593 F.3d 1064 (9th

19  Cir. 2010) (finding on a motion for summary judgment that the

20  defendant's policies do not proscribe substantive rules, and were

21  not promulgated in conformance with the procedures of the APA); Or.

22  Natural Desert Ass'n v. U.S. Forest Service, 465 F.3d 977 (9th Cir.

23  2006) (finding on a motion to dismiss, but after reviewing the full

24  administrative record, that the defendant's policies were final

25  within the meaning of the APA); High Sierra Hikers Ass'n v.

26  Blackwell, 390 F.3d 630 (9th Cir. 2004) (finding final agency

27  action and NEPA violations on a motion for summary judgment);

28  Northcoast Envtl. Ctr. v. Glickman, 136 F.3d 660 (9th Cir. 1998)

(finding on a motion for summary judgment that no environmental impact statement was necessary).

Defendants rely on three cases, <u>Fairbanks N. Star Borough v. U.S. Army Corps of Engineers</u>, 543 F.3d 586 (9th Cir. 2008), <u>Rattlesnake Coal. v. U.S. E.P.A.</u>, 509 F.3d 1095 (9th Cir. 2007), and <u>Inst. For Wildlife Prot. v. Norton</u>, 205 F.App'x 483, 485 (9th Cir. 2006), in support of their argument that courts routinely dismiss claims for lack of jurisdiction where there is not final agency action within the meaning of the APA. These cases are distinguishable from the instant case. In <u>Fairbanks</u>, a judgment on the pleadings action, the Ninth Circuit determined that there was no final agency action under the APA for purposes of judicial review.  543 F.3d at 591.  In a judgment on the pleadings case, unlike here, the court takes "all the allegations in the pleadings as true.  <u>Id.</u>  Here, Defendants contradict Plaintiffs' pleadings and ask the Court to consider outside evidence of a final agency action.  <u>Rattlesnake Coalition </u>is distinguishable because the primary issue in the case was whether there was sufficient federal control over the contested policy.  The Ninth Circuit did not address whether there was final agency action.  <u>See</u> 509 F.3d at 1105 (holding that only the federal government can be a proper defendant in an action to compel compliance with NEPA).  Finally, in <u>Institute for Wildlife Protection</u>, a terse Ninth Circuit opinion, the Court held that the plaintiffs failed to challenge a final agency action.  205 F.App'x at 485.  Aside from holding that the plaintiffs asserted a programmatic challenge, not within the district court's jurisdiction, the Ninth Circuit provides no other reasoning for its decision.

1    Determining whether the ETL, PGL, and White Paper are final

2    agency actions in the instant case requires a review of the full

3    administrative record because, as discussed supra, "the question of

4    jurisdiction is dependent on the resolution of factual issues going

5    to the merits' of [the] action."  Safe Air for Everyone v. Meyer,

6    373 F.3d 1035, 1040 (9th Cir. 2004).  Therefore, because the Court

7    requires the entire administrative record, it cannot, at this

8    juncture, determine whether there has been final agency action. [2]

9         2.   Programmatic Challenges

10   Defendants argue that Plaintiffs' NEPA and APA claims should

11   be dismissed because they are broad programmatic challenges.

12   Defendants argue that Plaintiffs do not challenge discrete or final

13   agency action, but the Corps' vegetation removal policy.

14   Defendants contend that Plaintiffs do not challenge any site-

---

[2] The Court reviewed Plaintiffs' Notice of Supplemental Authority
(Doc. #53) in which Plaintiffs supplied the Court with the recently
issued per curium United States Supreme Court decision in the case
of Sackett v. E.P.A., 2012 U.S. LEXIS 2320 (U.S. Mar. 21, 2012).
In Sackett, the Supreme Court held that property owners and other
regulated parties may challenge administrative compliance orders
issued by the Environmental Protection Agency ("EPA") under the
Clean Water Act.  The Court found that the compliance order "has
all the hallmarks of APA finality."  2012 U.S. LEXIS 2320 at *9.
The compliance order determined rights or obligations because the
plaintiffs had the legal obligation to "'restore' their property
according to an agency-approved Restoration Work Plan," they had to
"give the EPA access to their property and to records and
documentation related to the conditions at the Site," and "the
order expose[d] the Sacketts to double penalties in a future
enforcement proceeding."  Id. at *10.  The government argued that
judicial review of the compliance order was unavailable unless and
until the EPA filed a civil enforcement suit against them.  Id. at
*13-14.  Unlike the present case, the government did not argue that
the compliance order was a draft or was not a final decision.
Here, the dispute concerns whether the ETL, PGL, and White Paper
are final agency actions or draft recommendations.  Once the Court
considers the entire administrative record, it can turn to Sackett,
among other authority, to determine whether the disputed documents
constitute final agency action.

1  specific action.  Defendants continue that the three specific

2  examples Plaintiffs mention in their FAC do not prevent their

3  claims from being impermissible programmatic challenges because the

4  Plaintiffs do not make any specific allegations that the cited

5  actions were final, that the Corps violated NEPA, the APA, or the

6  ESA with regard to those instances, or that Plaintiffs were

7  themselves harmed by those actions.  Defendants argue that

8  Plaintiffs' requested relief is not tailored to any specific

9  project but seeks to enjoin nationwide standards and statewide

10 activity.  Defendants further argue that the ESA does not authorize

11 open-ended challenges and Plaintiffs' ESA claim does not fall

12 within the limited scope of the citizen management standard.

13 Defendants continue that the specific documents Plaintiffs

14 challenge do not have the force of law and do not have any force or

15 effect unless and until the Corps acts separately to apply them.

16    Plaintiffs counter that that they have challenged

17 identifiable, final agency actions within the meaning of the APA.

18 Plaintiffs argue that they seek vindication of procedural rights

19 conferred by NEPA, the ESA, and the APA, and the substantive

20 protections of the ESA.  Plaintiffs also argue that the nature of

21 the challenged actions cannot be determined in a 12(b)(1) motion.

22    The Supreme Court has made clear that the APA does not allow

23 "programmatic" challenges, but instead requires that Plaintiffs

24 contest a specific final agency action which has "an actual or

25 immediate threatened effect."  Lujan v. Nat'l Wildlife Fed'n, 497

26 U.S. 871, 882-94 (1990).  In Lujan, the plaintiffs alleged that the

27 defendants violated the Federal Land Policy Act, NEPA, and APA in

28 the administration of the "land withdrawal review program" of the

1   Bureau of Land Management, but failed to challenge any particular

2   agency action that caused harm.  Id. at 875, 891.  The Court held

3   that the "land withdrawal review program" was not an identifiable,

4   much less final, agency action or series of such actions within the

5   meaning of the APA.  Id. at 890.

6        Unlike the challenge in Lujan to the "land withdrawal review

7   program," Plaintiffs challenge identifiable, final agency actions

8   within the meaning of the APA.  Plaintiffs seek vindication of

9   procedural rights conferred by NEPA, ESA, and APA, and the

10  substantive protections of the ESA.  While the parties dispute

11  whether or not Defendants have issued final agency actions, if

12  through discovery, Plaintiffs can prove that the PGL, ESL, and

13  White Paper are final agency actions, then Plaintiffs' claims are

14  proper.

15       Furthermore, Defendants' argument that agency programs, as

16  opposed to specific decisions, are not subject to ESA compliance is

17  not persuasive.  "The Ninth Circuit has undeniably interpreted ESA

18  to require consultation on programmatic actions and rules,

19  including consultation at the planning stage, not just at the site-

20  specific stage."  Citizens for Better Forestry v. U.S. Dep't of

21  Agric., 481 F.Supp.2d 1059, 1095 (N.D.Cal. 2007); see also Pac.

22  Rivers Council, 30 F.3d 1050, 1055 (9th Cir. 1994)(holding that the

23  Forest Service's LRMPs which established comprehensible management

24  plans governing a multitude of individual projects required ESA

25  consultation because they may affect listed species).

26       Similarly, NEPA compliance is required even if the challenged

27  actions are part of a broad program.  Programmatic EISs have been

28  recognized and utilized in a number of cases before the Ninth

Circuit. See, e.g., N. Alaska Envtl. Ctr. v. Kempthorne, 457 F.3d 969 (9th Cir. 2006) (concluding that programmatic EIS prepared by Forest Service with respect to oil and gas leasing in Alaskan preserves was sufficiently site-specific even though it lacked analysis of the effect on each parcel since there was no way of knowing at time programmatic EIS was prepared what development would materialize); Friends of Yosemite Valley v. Norton, 348 F.3d 789 (9th Cir. 2003) (discussing the distinction between site-specific and programmatic EISs, and holding that programmatic EIS prepared in conjunction with creation of a land management plan for Yosemite was sufficient at the implementation stage and provided guidelines for future actions); N. Alaska Envtl. Ctr. v. Lujan, 961 F.2d 886 (9th Cir. 1992) (holding programmatic EIS prepared in conjunction with approval of mining in Alaskan parks was adequate).

The Ninth Circuit's recognition of the propriety of programmatic EISs, and its distinction between the requirements for programmatic EISs and site-specific EISs, suggests that, at least in this circuit, NEPA's requirement of an EIS is not necessarily limited to site or project-specific impacts or activities, as Defendants suggest.  In recognizing programmatic EISs, the Ninth Circuit has held that "[a]n EIS for a programmatic plan . . . must provide 'sufficient detail to foster informed decision-making,' but that 'site-specific impacts need not be fully evaluated until a critical decision has been made to act on site development.'" Friends of Yosemite, 348 F.3d at 800 (quoting Lujan, 961 F.2d at 890); see also California v. Block, 690 F.2d 752, 761 (9th Cir. 1982) (explaining that considerations regarding the adequacy of a programmatic EIS may differ from those for a site-specific EIS).

1  Indeed, Plaintiffs' procedural challenges to the alleged
2  programmatic NEPA decisions are immediately ripe for review because
3  they "will influence subsequent site-specific actions" and "pre-
4  determine[] the future." Laub v. U.S. Dep't of the Interior, 342
5  F.3d 1080, 1088, 1091 (9th Cir. 2003). Accordingly, the Court
6  finds that Plaintiffs' programmatic challenge is cognizable under
7  these statues.

8              3.  Rulemaking

9      Defendants argue that the Court should dismiss Plaintiffs'
10 third claim which alleges that the Corps violated the APA by
11 failing to complete formal rulemaking before adoption of new rules.
12 Defendants argue that the ETL sets forth "guidelines" to steer
13 future decisionmaking and is not a substantive rule that must
14 comply with the APA's notice and comment procedures. Plaintiffs
15 respond that the ETL, interim rule, and PGL are substantive rules
16 because they are designed to implement and prescribe Corps
17 procedures and requirements for vegetation management on and near
18 levees throughout the United States.

19     Under the APA, an agency "'is required to follow prescribed
20 notice-and-comment procedures before promulgating substantive
21 rules.'" Sacora v. Thomas, 628 F.3d 1059, 1069 (9th Cir. 2010)
22 (quoting Colwell v. Dep't of Health & Human Servs., 558 F.3d 1112,
23 1124 (9th Cir. 2009), cert. denied, 132 S. Ct. 152 (Oct. 3, 2011).
24 Notice and comment requirements are only for substantive rules, not
25 "'interpretive rules, general statements of policy, or rules of
26 agency organization, procedure, or practice.'" Id. (quoting Mora-
27 Meraz v. Thomas, 601 F.3d 933, 939 (9th Cir. 2010)). "The
28 definition of a substantive rule is broad and includes action that

is legislative in nature, is primarily concerned with policy considerations for the future rather than the evaluation of past conduct, and looks not to the evidentiary facts but to policy-making conclusions to be drawn from the facts." Coal. For Common Sense in Gov't Procurement v. Sec'y of Veterans Affairs, 464 F.3d 1306, 1317 (Fed. Cir. 2006) (internal quotation omitted).

Here, Plaintiffs allege that the Corps adopted a new vegetation management policy that supersedes prior guidance and the Corps published in the Federal Register an interim rule that explicitly revokes all prior variances.  Plaintiffs further allege that the ETL does far more than reiterate and clarify the vegetation management standards previously stated in EM 1110-2-301. Defendants reply that the ETL is not binding because there is a chance for a waiver or modification demonstrating that the policies were only intended to provide guidance within the Park Service. This argument, however, is a factual challenge concerning whether the ETL is a substantive rule or a guideline, and the Court cannot resolve this issue without the full administrative record.  Thus, the Court is unable to decide this rulemaking issue until it has had the opportunity to review the full administrative record.

### 4.   Ripeness

Defendants contend that in the alternative to their "no final agency action" argument, this Court lacks jurisdiction because none of Plaintiffs' claims are ripe.  Defendants argue that Plaintiffs have not targeted a concrete application of any of the Corps' policies.  Defendants contend that they are still considering revisions to their variance policy, and the Corps and California state and local agencies are jointly developing a comprehensive,

long term program to upgrade and manage vegetation on Central

Valley flood management systems, including levees eligible for the

Rehabilitation and Inspection Program ("RIP").  Defendants argue

that Plaintiffs cannot show they will suffer "immediate, direct, or

significant hardship" if judicial review is delayed because it has

not been determined which sponsors of levee systems now enrolled in

the RIP might act to remove vegetation in order to comply with the

ETL's vegetation standard.  Those decisions, according to

Defendants, depend on any number of future decisions by the Corps

and the individual levee sponsors.  Furthermore, Defendants claim

that Plaintiffs have not articulated any hardship from delaying

judicial review until it becomes clear whether and how the ETL's

vegetation standards will be applied to any particular levee

system, especially the levees in the Central Valley, and how that

specific application of the vegetation standard causes tangible

harm to Plaintiffs.  Moreover, judicial intervention at this stage

would, in Defendants' view, inappropriately interfere with ongoing

administrative action on both national and local bases.  Finally,

Defendants argue that the effects and application of the ETL and

the Corps' policies are speculative on the existing record;

Plaintiffs do not challenge the application of the Corps' policies

to any particular levee system, but rather they challenge the

policies on a programmatic basis and in their potential

application.

     Plaintiffs respond that Defendants' argument on ripeness

ignores the tangible procedural injuries alleged by Plaintiffs due

to the Corps' failure to undertake timely NEPA and ESA review.

Plaintiffs further argue that environmental plaintiffs need not

1  wait for environmental damage to occur to challenge an agency's

2  NEPA compliance.

3      The basic rationale of ripeness is "to prevent the courts,

4  through avoidance of premature adjudication, from entangling

5  themselves in abstract disagreements over administrative policies,

6  and also to protect the agencies from judicial interference until

7  an administrative decision has been formalized and its effects felt

8  in a concrete way by the challenging parties." Abbott Labs. v.

9  Gardner, 387 U.S. 136, 148-49 (1967).  In assessing ripeness, a

10  court considers: "(1) whether delayed review would cause hardship

11  to the plaintiffs; (2) whether judicial intervention would

12  inappropriately interfere with further administrative action; and

13  (3) whether the courts would benefit from further factual

14  development of the issues presented." Ohio Forestry Ass'n, Inc. v.

15  Sierra Club, 523 U.S. 726, 733 (1998).

16      Defendants primarily rely on Ohio Forestry Ass'n, Inc. v.

17  Sierra Club, 523 U.S. 726 (1998) to argue that the case is not

18  ripe.  However, as Plaintiffs point out, Ohio Forestry is

19  distinguishable from the current case because Plaintiffs allege

20  procedural injuries due to the Corps' alleged failure to undertake

21  timely NEPA and ESA review.  The plaintiffs in Ohio Forestry

22  alleged a substantive statutory violation; they did not allege a

23  procedural NEPA violation.  The Plaintiffs in this case, however,

24  allege that Defendants violated NEPA, ESA, and APA for failure to

25  comply with the procedural requirements.  As the Supreme Court

26  explained in Ohio Forestry, "NEPA, . . . simply guarantees a

27  particular procedure, not a particular result. . . . [A] person

28  with standing who is injured by a failure to comply with the NEPA

24

procedure may complain of that failure at the time the failure takes place, for the claim can never get riper." Id. at 737. "The rights conferred by NEPA [and the ESA] are procedural rather than substantive, and plaintiffs allege a procedural rather than substantive injury." Kern v. U.S. Bureau of Land Mgmt., 284 F.3d 1062, 1071 (9th Cir. 2002). "If there was an injury under NEPA, it occurred when the allegedly inadequate EIS was promulgated. That is, any NEPA violation (and any procedural injury) inherent in the [alleged lack of an EA or EIS] ha[s] already occurred." Id. Furthermore, adjudicating the NEPA and ESA claims now will not "inappropriately interfere with further administrative action" because Defendants allegedly have already surpassed the stage in which they should have issued the EA, EIS, or engaged in their ESA consultation. Id.

Furthermore, the Ninth Circuit has repeatedly held that environmental plaintiffs need not wait for environmental damage to occur to challenge an agency's NEPA compliance. See Cal. ex. Rel. Lockyer v. U.S. Dept. of Agric., 575 F.3d 999, 1011 (9th Cir. 2009) (finding matter ripe for adjudication where it would be plaintiffs only opportunity to challenge a rule on a nationwide, programmatic basis); Kern, 284 F.3d at 1078 (warning against the "tyranny of small decisions" by holding that "[a]n agency may not avoid an obligation to analyze in an EIS environmental consequences that foreseeably arise from [a program] merely by saying that the consequences are unclear or will be analyzed later when an EA is prepared for a site-specific program"); Idaho Conservation League v. Mumma, 956 F.2d 1508, 1516 (9th Cir. 1992) ("[I]f the agency action could be challenged at the site-specific development stage,

the underlying programmatic authorization would forever escape review.  To the extent that the plan pre-determines the future, it represents a concrete injury the plaintiffs must, at some point, have standing to challenge."); Salmon River Concerned Citizens v. Robertson, 32 F.3d 1346, 1355 (9th Cir. 1994) (finding NEPA challenge to regional EIS on herbicide use ripe for review).

Accordingly, Plaintiffs' claims are ripe for review.

D.   Standing

Defendants argue that Plaintiffs lack standing to challenge the ETL, PGL, or the program they allege arises from the two policies because there is no live dispute over a specific concrete application of those particular policies.  Defendants argue that Plaintiffs' alleged procedural injuries are not concrete injuries and that Plaintiffs do not aver any concrete and immediate injury because they fail to identify any particular situation where the Corps is applying the challenged policies to compel the removal of all vegetation from any levee system.

Plaintiffs argue that where procedural violations are at issue, they do not need to demonstrate any actual environmental harm to establish standing; an increased risk of harm resulting from Defendants' action or omissions is sufficient.  Plaintiffs argue that the Ninth Circuit has repeatedly recognized "increased risk" of injury as supporting standing in NEPA cases and harm cognizable for the purposes of standing in ESA cases is found where there is added risk to species when an agency makes a decision in violation of the ESA's consultation requirements.

Where procedural violations are at issue, in order "to show a cognizable injury in fact, [Plaintiffs] must allege that

26

(1) [Defendants] violated certain procedural rules; (2) these rules protect [Plaintiffs'] concrete interests; and (3) it is reasonably probable that the challenged action will threaten their concrete interests." Citizens for Better Forestry v. U.S. Dep't. of Agric., 341 F.3d 961, 969-70 (9th Cir. 2003). Plaintiffs do not have the burden to show that harm will in fact occur or already has occurred from the challenged actions. See id. at 972 (explaining that if a plaintiff's standing under NEPA depended on "'proof' that the challenged federal project will have particular environmental effects, we would in essence be requiring that the plaintiff conduct the same environmental investigation that he seeks in his suit to compel the agency to undertake.").

Plaintiffs allege that the Corps has not complied with the procedural requirements of NEPA and the APA rulemaking statutes or the procedural and substantive mandate found in ESA Section 7, and that these statutes protect plaintiffs' concrete interests. Plaintiffs' members also testify to their interests in NEPA and ESA compliance. See Second Decl. of Jeffrey Miller ("Second Miller Decl.") (Doc. #47-3) ¶¶ 10, 11; Decl. of Kelly L. Catlett in Supp. of Pls.' Opp'n to Defs.' Mot. to Dismiss ("Catlett Decl.") (Doc. #47-2) ¶ 11. Plaintiffs' members testify that they use and enjoy affected rivers and levees for aesthetic and recreational purposes, fishing, boating, bird watching, rafting, biking, enjoying the scenic beauty the river and trees provide, and observing species and that their interests at stake include the prevention of environmental damage to these areas as well as the preservation of endangered and threatened species that are found there. See Second Miller Decl. ¶ 10; Catlett Decl. ¶¶ 3-4. They also testified that

1  the Corps' action has, and may in the future, destroy the values

2  they derive from the rivers, levees, and species that inhabit these

3  areas.  See, e.g., Second Miller Decl. ¶ 11; Catlett Decl. ¶¶ 5-10.

4  Therefore, Plaintiffs have shown it is reasonably probable that the

5  challenged actions will threaten Plaintiffs' concrete interests.

6      Defendants' objection centers on the merits of the claims and

7  whether or not NEPA, ESA, or APA's statutory requirements are

8  applicable to the Corps' challenged action, which, Defendants

9  contend, are part of a program or policy.  However, the Ninth

10 Circuit has long recognized standing to challenge NEPA compliance

11 for programmatic decisions.  See, e.g. Pac. Rivers Council v. U.S.

12 Forest Serv., 668 F.3d 609, 617-21 (9th Cir. 2012) (finding

13 standing to challenge programmatic forest plan); Sierra Forest

14 Legacy v. Sherman, 646 F.3d 1161, 1179-80 n.2 (9th Cir. 2011)

15 (finding standing to bring a facial challenge without challenge to

16 site specific implementation and explaining procedural injury under

17 NEPA was ripe for facial challenge); Salmon River Concerned

18 Citizens v. Robertson, 32 F.3d 1346, 1355 (9th Cir. 1994) (finding

19 standing where a vegetation management plan failed to comply with

20 NEPA).

21     Furthermore, Plaintiffs have demonstrated concrete interests

22 that meet the geographical nexus requirement for standing.  The

23 Ninth Circuit has described the concrete interests test as

24 requiring a geographic nexus between the individual asserting the

25 claim and the location suffering an environmental impact." Western

26 Watersheds Project v. Kraayenbrink, 632 F.3d 472, 485 (9th Cir.

27 2011) (citations omitted).  "[E]nvironmental plaintiffs must allege

28 that they will suffer harm by virtue of their geographic proximity

to and use of areas that will be affected by the [challenged] policy." Citizens for Better Forestry, 341 F.3d at 971 (holding plaintiffs met the geographic nexus requirement where they "properly alleged, and supported with numerous affidavits" their members' use and enjoyment of a "vast range of national forests").

Plaintiffs have alleged that the Corps' actions may affect a very large number of rivers, levees, and species throughout California including the places which Plaintiffs use and enjoy and many of the species in which Plaintiffs have alleged concrete interests. Plaintiffs' members testify to their use of specific areas that have been or may be affected, their interests in vegetation on levees, the health of the riparian areas, and species that depend on riparian areas, and species that depend on riparian areas and many of the river systems with levees which may be affected by the Corps' challenged actions. See, e.g., Catlett Decl. ¶¶ 3, 5-10 and Second Miller Decl. ¶¶ 4-6. While Defendants argue that that Plaintiffs must identify the imminent projects that threaten harm to their concrete interests at the outset of the litigation, as Plaintiffs point out, the full extent of the harm and injury to Plaintiffs' members is unknown due to the Corps' alleged failure to comply with NEPA or the APA rulemaking procedures, and to formally consult with wildlife agencies on potential impacts to endangered species pursuant to the ESA, prior to adopting the ETL and interim rule. Plaintiffs "need not assert that any specific injury will occur in any specific [levee] that their members will visit. 'The asserted injury is that environmental consequences might be overlooked' as a result of deficiencies in the government's analysis under environmental

1  statutes." Citizens for Better Forestry, 341 F.3d at 971-72

2  (quoting Salmon River Concerned Citizens v. Robertson, 32 F.3d

3  1346, 1355 (9th Cir. 1994)); see also Res. Ltd., Inc. v. Robertson,

4  35 F.3d 1300, 1302-03 (9th Cir. 1993) (holding that plaintiffs had

5  standing to challenge a forest plan even though they could not

6  point to any specific site where the injury is likely to occur).

7      Defendants' reliance on P.E.T.A. v. U.S. Dep't of Health &

8  Human Services, 917 F.2d 15, 17 (9th Cir. 1990), where plaintiffs'

9  allegations were found wanting at the summary judgment stage, is

10 distinguishable.  In that case, the court found failure to

11 establish standing on a summary judgment motion based on

12 declarations which failed to adequately assert personal injury or

13 harm from grant of funds to research institutions.  Here, to

14 survive this motion to dismiss, Plaintiffs must plead "enough facts

15 to state a claim to relief that is plausible on its face." Bell

16 Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  Plaintiffs

17 provide declarations sufficiently asserting injury and harm

18 stemming from Defendants' actions.

19     The types of harm and injury Plaintiffs' members testify to

20 are cognizable for purposes of standing.  Plaintiffs have standing

21 because the alleged injury "is geographically specific, is caused

22 by the regulations at issue, and is imminent." Ctr. for Biological

23 Diversity, 588 F.3d at 708.

24     Finally, Plaintiffs have demonstrated causation and

25 redressability.  In a procedural challenge, Plaintiffs can assert

26 their right to protect a concrete interest "without meeting all the

27 normal standards for redressability and immediacy." Lujan, 504

28 U.S. at 572 n.7.  Plaintiffs "must show only that they have a

1  procedural right that, if exercised, could protect their concrete
2  interest." <u>W. Watersheds Project v. Kraayenbrink</u>, 632 F.3d, 485
3  (9th Cir. 2011) (citations omitted).  Plaintiffs seek an order
4  requiring the Corps to comply with NEPA, the ESA, and APA
5  rulemaking procedures, any of which may relieve some or all of
6  Plaintiffs' injuries.  To satisfy the causation and redressability
7  requirement for procedural injury purposes, Plaintiffs need not
8  show that compliance with ESA, APA, and NEPA will ultimately
9  redress their injuries, only that compliance with these
10 requirements may redress the injury.  Accordingly, Plaintiffs have
11 sufficiently alleged standing.

12
13                          IV.   ORDER
14      For the reasons set forth above,
15      The Court DENIES Defendants' Motion to Dismiss.
16      Defendants shall file their Answer to Plaintiffs' First
17 Amended Complaint within twenty (20) days of the date of this
18 Order.
19      IT IS SO ORDERED.
20 Dated: April 27, 2012
21                          JOHN A. MENDEZ,
                            UNITED STATES DISTRICT JUDGE
22
23
24
25
26
27
28

31